**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:19-CR-15** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **FOSQUE KINTE DENMARK** | : | |

<u>**MEMORANDUM AND ORDER**</u>

### I.   <u>Introduction</u>

In requesting release pending sentencing, Fosque Denmark must overcome a series of statutory hurdles. First, by virtue of the serious drug trafficking charges lodged against him, Denmark was presumed at the time of his indictment to present a danger to the community. 18 U.S.C. § 3142(e). This presumption was further bolstered by Denmark's prior criminal history, which was marked by previous drug convictions. Convicted of drug trafficking on his own guilty plea, Denmark awaits sentencing and is now subject to a second, higher set of legal hurdles which he must satisfy in order to secure release pending sentencing. 18 U.S.C. § 3143(a)(2). Finally, to the extent that he now wishes to cite some compelling circumstances, namely the COVID-19 pandemic, as the justification for his release, Denmark faces yet another set of legal hurdles, all of which must be met before we can consider his release.

This case comes before us for consideration of a motion for presentence release of the defendant filed pursuant to 18 U.S.C. § 3142(i), which provides that:

> The judicial officer may, . . ., permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142 (i). In this case, the defendant is subject to mandatory presentence detention pursuant to 18 U.S.C. § 3143(a)(2). Nevertheless, he seeks presentence release pursuant to 18 U.S.C. § 3145(c) which provides that: "A person subject to detention . . . , and who meets the conditions of release . . . , may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."

In the instant case, the "exceptional reason" which the defendant asserts justifies the defendant's temporary release from presentence detention is the COVID-19 pandemic that is sweeping the nation, and the dangers of infection which may result from close confinement in a custodial setting. This motion is fully briefed by the parties, and is therefore ripe for resolution.

We acknowledge the gravity of the defendant's concerns, which are shared by all Americans as this nation faces a pandemic without precedent in the past century of our nation's history. In addressing the instant motion, we must assess these individual medical concerns, apply the legal benchmarks mandated by Congress, and weigh these concerns against the important societal interests promoted by the Bail Reform Act, which calls for the detention of those defendants who present a

danger to the community. We also undertake this analysis mindful of the exacting legal standards set by statute in this case, which involves a request for bail by a criminal recidivist drug trafficker who is awaiting sentencing. Having conducted an individualized assessment of the facts and circumstances presented in this case, for the reasons set forth below it is ordered that the motion for temporary release is DENIED.

## II.   <u>Factual Background and Procedural History</u>

On January 9, 2019, the defendant was charged with two counts of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii). Following the defendant's arrest, the United States moved pursuant to 18 U.S.C. § 3142 to detain the defendant pending trial. Initial proceedings and a detention hearing were then conducted in this case on February 28, 2019.

At the time of these initial proceedings, the probation office prepared a comprehensive pre-trial services report, which provided the following information concerning the defendant's social and medical history, prior history of substance abuse, and criminal record: the defendant was born and raised in Los Angeles County in California, where he has lived his whole life. He resides with his fiancé, whom he has been in a fluctuating relationship with for the past 22 years, and their four children, two of whom are biologically his own. The defendant has retained steady employment for the past 15 years working for In Home Supportive Services

throughout Los Angeles County, and for his church as a video editor for the past 10 years. He reports suffering from diabetes and takes medication for this condition twice per day. He is also taking Percocet as needed for back pain. The defendant's criminal background check revealed dated convictions for possession/purchase of cocaine base for sale or distribution, disorderly conduct, and possession/purchase of a controlled substance, and it appears that the defendant has not faced recent charges aside from those currently pending. He has, however, used at least one alias in the past and was subject to a number of more serious charges which were ultimately dismissed or resulted in the defendant's acquittal.

Based on these facts, the pre-trial services report also recommended the defendant's detention based upon a careful evaluation of the following individual characteristics of the defendant: his prior convictions for similar charges to the present pending charge, his prior failure to appear, his dishonesty when asked about prior convictions, his ownership of a firearm despite being prohibited from doing so, his largely unverified background, and the nature of the instant charges.

Following a hearing, the district court ordered the defendant detained pursuant to 18 U.S.C. § 3142, finding that the defendant presented a risk of flight and danger to the community, and that there was no condition or combinations of conditions which could assure the safety of the community or the defendant's appearance in

court as required. On this score, the district court specifically found that the following factors supported the pre-trial detention of the defendant:

> Defendant has been indicted with two counts of distributing five-hundred or more grams of methamphetamine, each count carrying a ten-year minimum sentence. Evidence seized from Defendant's home included a cache of firearms, ammunition, and a bullet-proof vest. The Government also provided financial records indicating deposits from the sale of methamphetamine into an account in Defendant's name, and proffered that Defendant was on video arranging the shipment of methamphetamine involved in the second count of the Indictment.

(Doc. 28). In addition, the proposed third-party custodian who would be charged with housing the defendant if he should be released was found to be inappropriate, given her living circumstances at that time.

On April 30, 2019, a plea agreement was filed in which the defendant agreed, among other terms and conditions, to plead guilty to Count II of the indictment, charging him with distribution of 500 grams and more of methamphetamine. (Doc. 32). In addition, the government agreed to dismiss the remaining count following sentencing. The defendant entered a guilty plea on May 7, 2019, which was accepted by the district court on the same day via order that deferred sentencing until after the entry of a presentence investigation report for the defendant. A final version of this report was completed on August 23, 2019, indicating that the total minimum sentence for this offense is 10 years. Sentencing is presently scheduled to occur in this case on June 9, 2020.

The instant motion for temporary release does not focus upon or directly challenge any of these initial detention findings or determinations. Instead, the defendant's motion for release rests upon a concern shared by all: the risk of infection due to the current coronavirus pandemic. As the defendant notes, this risk of community spread is heightened in a custodial setting, where the very nature of confinement limits the ability of individuals to engage in the type of social isolation that is recommended to curb the spread of this disease.

In addition to this generalized concern, the defendant cites the following specific and individualized factors which heighten these medical concerns in the instant case: his diabetes and chronic back pain which he asserts make him more susceptible to contracting this virulent novel virus.

The Government, in turn, opposes this motion, arguing that the defendant's detention pending sentencing is mandatory under 18 U.S.C. § 3143(a). In addition, the Government posits that the defendant's reasons supporting the motion "neither undermine the Court's prior conclusion that no combination of conditions would ensure the safety of the community nor provide any compelling reason to justify his temporary release pending sentencing." (Doc. 61). Quite simply, the Government asserts that the defendant has not met the high burden to justify his release.

For the reasons set forth below, we agree and will deny this motion.

### III.    Discussion

The defendant has entered a guilty plea in this case and is awaiting sentencing. Therefore, the defendant's detention is mandatory pending his sentencing unless the court either "determines that there is a substantial likelihood that a motion for acquittal or new trial will be granted or the Government recommends that no sentence of imprisonment be imposed, and the court finds that the Defendant is not likely to flee or pose a danger to any other person or the community." United States v. Ortiz, 2020 U.S. Dist. LEXIS 67651, *9 (M.D. Pa. Apr. 17, 2020) (citing 18 U.S.C. § 3143(a)(2)). In this case, the defendant has entered a guilty plea and the Government is recommending a sentence of imprisonment. Thus, the exceptions provided in 18 U.S.C. § 3143(a)(2) do not relieve the court of the mandatory obligation to detain the defendant pending his sentencing.

In spite of this mandatory detention, the defendant has nevertheless filed the present motion for presentence release under 18 U.S.C. § 3145(c) in response to the COVID-19 pandemic, alleging that this event presents an "exceptional reason" to compel his release. As courts within this district have explained:

> In order to address Defendant's request for temporary release pending sentencing, the court must first determine whether Defendant meets the criteria for release set forth in 18 U.S.C. §§ 3143(a)(1) or (b)(2). See 18 U.S.C. § 3145(c). Under the pertinent subsections of Section 3143, release may be authorized if the court finds by clear and convincing evidence that the Defendant is not likely to flee or pose a danger to the safety of any other person or the community if released. If the court makes these findings, then the court may order the Defendant's release,

under appropriate conditions, if "it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c).

United States v. Ortiz, 2020 U.S. Dist. LEXIS 67651, *10 (M.D. Pa. Apr. 17, 2020).

Thus, in order for us to grant the defendant's motion for temporary presentence release, we must find by clear and convincing evidence that he does not present a flight risk or danger to the community. This is an exacting burden of proof for Denmark, a previously convicted drug trafficker who awaits sentencing for drug trafficking. In effect, Denmark invites us to find that the court erred when it previously ordered his detention. Given this high burden at this procedural stage, for the reasons set forth below, we are unable to make this determination, and the defendant's motion will accordingly be denied.

### A. **Temporary Release Under 18 U.S.C. § 3142**

While cast as a motion seeking temporary release under 18 U.S.C. §§ 3142 (i), and 3145, this motion is best understood and evaluated in the context of the Bail Reform Act as a whole. In the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, Congress created a comprehensive set of statutory guidelines governing release and detention decisions for criminal cases in federal court. As one court has recently observed:

> Before this Court can turn to the analysis under 18 U.S.C. § 3142(i), it is essential to look at the overarching structure of the statute. The fundamental precept of the Bail Reform Act mandates the release of individuals so long as the court can be reasonably assured the defendant does not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To the extent that conditions, or a combination of conditions, can

be fashioned to reasonably provide such assurances, the individual must be released, as detention is "the carefully limited exception." Id.; see also United States v. Salerno, 481 U.S. 739, 755 (1987).

In assessing what conditions, if any, can be fashioned, judges are directed to take into account available information pertaining to the factors identified under 18 U.S.C. § 3142(g). Those factors include the nature and circumstances of the offense charged, including whether it involves controlled substances or firearms; the weight of the evidence against the defendant; the defendant's history and characteristics (including history relating to drug abuse, defendant's criminal history, and record of appearing at court proceedings); whether the detainee was on probation, parole, or other court supervision at the time of the allegedly offensive conduct; and the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g). Ultimately, the information provided in each case aids in the individualized assessment that will result in the release or the detention of the person.

United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020).

Beyond this individualized assessment mandated by law, the Bail Reform Act also enjoins us to weigh release and detention decisions against a series of statutory presumptions. Principal among these presumptions which guide us in this custodial calculus are a series of statutory presumptions in favor of detention for defendants charged with violent crimes, serious drug trafficking offenses, or crimes involving the sexual exploitation of the most vulnerable in society, our children. As to these defendants, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed," one of these

enumerated offenses. 18 U.S.C. § 3142 (e)(3). In this regard, it is also well-settled that an "indictment [charging an enumerated offense] is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986).

Further given Denmark's guilty plea the defendant's detention is mandatory pending his sentencing unless the court either "determines that there is a substantial likelihood that a motion for acquittal or new trial will be granted or the Government recommends that no sentence of imprisonment be imposed, and the court finds that the Defendant is not likely to flee or pose a danger to any other person or the community." United States v. Ortiz, 2020 U.S. Dist. LEXIS 67651, *9 (M.D. Pa. Apr. 17, 2020) (citing 18 U.S.C. § 3143(a)(2)). As we have noted, Denmark's case does not fall within any of these narrow exceptions to the mandatory detention called for by the Bail Reform Act for offenders awaiting sentencing.

Cast against this comprehensive statutory scheme prescribing the procedure for making initial bail and detention decisions, § 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142 (i). Until recently, there was a relative paucity of case law construing for us what would constitute a "compelling reason" justifying the temporary release of a previously

detained defendant. Of late, however, a rising tide of case law has construed the meaning and reach of § 3142(i) in the context of continuing custody decisions in the age of coronavirus.

From these cases a few guiding principles have emerged. First, the very nature of the standards prescribed by statute—which require a showing of some "compelling" or "exceptional reason" to warrant temporary release from custody—suggest that such motions must meet exacting standards and "the few courts that have ordered temporary release on the basis of such a condition have done so only 'sparingly' and typically in order 'to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries[,]' " United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quoting United States v. Hamilton, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)).

Second, like the initial decision to detain, a determination of whether a movant has shown compelling or exceptional reasons justifying temporary release is an individualized judgment which takes into account the unique circumstances of each case and each defendant. Thus, courts have allowed for temporary release where a defendant's specific circumstances presented a compelling and immediate need for release. For example, release of a defendant is permitted under § 3142(i) when that defendant is suffering from a terminal illness or serious injuries. See, e.g., United

States v. Scarpa, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS that could no longer be managed by correctional authorities); see also United States v. Cordero Caraballo, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshal's Service reused to take custody of him until his wounds closed).

There is a necessary corollary to this principle, calling for an individualized and specific showing of a compelling reason to satisfy the movant's burden of proof under § 3142(i). Cases construing § 3142(i) generally "have rejected emergency motions for release of otherwise healthy and potentially violent defendants based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020) (citing United States v. Cox, No. 19-cr-271, 2020 WL 1491180 (D. Nev. Mar. 27, 2020)); United States v. Green, No. 19-cr-304, 2020 WL 1477679 (M.D. Fla. Mar. 26, 2020); United States v. Steward, No. 20-cr-52, 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020); United States v. Hamilton, No. 19-cr-54, 2020 WL 1323036 (E.D.N.Y. Mar. 20, 2020); see also United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Rather, at a

minimum courts have typically required proof of a "[d]efendant's particular vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i)." United States of Am. v. Keith Kennedy, No. 18-20315, 2020 WL 1493481, at *4 (E.D. Mich. Mar. 27, 2020), reconsideration denied sub nom. United States v. Kennedy, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

The United States Court of Appeals for the Third Circuit has very recently underscored for us the necessity of a more particularized showing of a compelling need for release beyond proof of the generalized risks posed by COVID-19 when a prisoner seeks release from jail. Addressing this question in another custodial setting, petitions for compassionate release from custody, the court of appeals stated in terms that are equally applicable here that:

> We do not mean to minimize the risks that COVID-19 poses in the . . . prison system, particularly for inmates . . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify . . . release.

United States of America v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Finally, any determination of whether a movant has established compelling reasons which now warrant temporary release from custody must take into account the important considerations of public safety and flight which animated the original decision to detain the offender. Thus, "in considering the propriety of temporary release, the court would need to balance the reasons advanced for such release

against the risks that were previously identified and resulted in an order of detention." <u>United States of America v. Cox</u>, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020). In practice, therefore, a decision on a motion seeking release under § 3142(i) entails an informed judgment assessing both individual health concerns and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary."
> § 3142(i)

<u>United States v. Clark</u>, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). In addition, those defendants seeking presentence release must demonstrate by clear and convincing evidence that they do not present a risk of flight or a danger to the community.

It is against this statutory backdrop that we evaluate the instant request for temporary release from custody.

### B. <u>The Defendant's Motion for Temporary Release Will Be Denied.</u>

Our analysis of this motion begins with the proposition that "[w]hile the COVID-19 pandemic has given rise to exceptional and exigent circumstances that require the prompt attention of the courts, it is imperative that they continue to

carefully and impartially apply the proper legal standards that govern each individual's particular request for relief." United States v. Roeder, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020). In this case, our careful and impartial application of the legal standards mandated by § 3142(i), requires us to assess both the public safety grounds for the defendant's initial detention as well as: (1) the specificity of the defendant's stated COVID-19 concerns; (2) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (3) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

Turning first to an individualized evaluation of the defendant's COVID-19 concerns, our assessment begins with a recognition of the unprecedented health care crisis presented by the coronavirus pandemic. However, it is clear that under § 3142(i), we cannot grant release of a defendant previously deemed to be a danger to public safety or a risk of flight "based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020). In this case, beyond a genuine, but generalized, concern regarding the risks created by COVID-19, the defendant alleges that he suffers from diabetes and back pain. These medical conditions, while a necessary prerequisite to a motion for temporary release, standing alone are not sufficient to justify release. United States v. Clark, No. 19-

40068-01-HLT, 2020 WL 1446895, at *1 (D. Kan. Mar. 25, 2020) (denying release to diabetic defendant).

Instead, we must then weigh those specific health concerns against the substantial public safety considerations which led the district court to order the defendant's detention in the first instance. In this case, the following factors, unique to the defendant, compelled the decision to detain the defendant as a risk of flight and danger to the community: "Defendant has been indicted with two counts of distributing five-hundred or more grams of methamphetamine, each count carrying a ten-year minimum sentence. Evidence seized from Defendant's home included a cache of firearms, ammunition, and a bullet-proof vest. The Government also provided financial records indicating deposits from the sale of methamphetamine into an account in Defendant's name, and proffered that Defendant was on video arranging the shipment of methamphetamine involved in the second count of the Indictment." (Doc. 28). In addition, the defendant has used aliases in the past and would be residing on the other side of the country, making retrieval, if and when necessary, unduly burdensome on the government agents who would be responsible for transporting the defendant back to Pennsylvania. Thus, the defendant is unable to prove by clear and convincing evidence that he does not pose a danger to society or a flight risk in this case.

Lastly, we note that the defendant has a new third-party custodian who has stated that he is ready and willing to house the defendant, should we grant his presentence release and has indicated that he does not request a hearing on this motion unless the court deems it necessary to hear from this new proposed third-party custodian. We note that we are not required to conduct an evidentiary hearing to determine whether presentence release is appropriate. See United States v. Oaks, 793 F. App'x 744, 747 (10th Cir. 2019); United States v. Hensler, 18 F.3d 936 (5th Cir. 1994); United States v. King, 849 F.2d 485, 490 (11th Cir. 1988); see also Jones, 2020 U.S. Dist. LEXIS 59755, 2020 WL 1674145, at *2-5.

In this case, in the exercise of our discretion we are declining to schedule such a hearing. While we do not doubt that Denmark's proposed third-party custodian is ready and willing to accept the defendant into his home before the defendant's sentencing, we find that the facts and circumstances which caused the court to initially detain the defendant have not materially changed. However, the legal benchmarks which Denmark must meet to secure release have changed in ways which dramatically heighten the showing he must make to justify release prior to sentencing, Given this changed legal landscape, quite simply, the defendant has not and cannot demonstrate either that he does not pose a danger to the community or that the onset of the COVID-19 pandemic presents such an exceptional reason to justify his temporary release. Indeed, the burden this defendant faces as a

presentence detainee to garner his temporary release is higher than the typical burden for those defendants being held pending their trials. Here, the only basis propounded to justify the defendant's release is the onset of the novel coronavirus and the fear of harm that could come from infection. Since it is well-established that pretrial detainees who merely argue generalized concerns regarding the novel coronavirus coupled with a diagnosis of diabetes are not entitled to temporary release, United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *1 (D. Kan. Mar. 25, 2020) (denying release to diabetic defendant), we can hardly determine that the defendant in this case, seeking presentence release with an even higher statutory burden, should be entitled to release. Given these circumstances, we do not find it necessary to subject the defendant, counsel, and an additional third-party custodian to a hearing in this case where the defendant was otherwise unable to meet the difficult burden that he faced in this case.

## IV.   Conclusion

Weighing and balancing these countervailing considerations we conclude that the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) will be DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are exceptional reasons that justify the defendant's release. United States of America v.

<u>Lee</u>, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

An appropriate order follows.

So ordered this 27th day of April 2020.


*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:19-CR-15** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **FOSQUE KINTE DENMARK** | : | |

## <u>ORDER</u>

In accordance with the accompanying Memorandum Opinion, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) is DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are exceptional reasons that justify the defendant's release. <u>United States of America v. Lee</u>, No. 19-CR-298 (KBJ), 2020 WL 1541049, at \*7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

So ordered this 27th day of April 2020.


<u>/s/ Martin C. Carlson</u>
Martin C. Carlson
United States Magistrate Judge
